## COURT OF APPEALS,

### June 17, 1913.

# THE PEOPLE v. EDWARD T. ROSENHEIMER.

### (209 N. Y. 115.)

(1.) MOTOR VEHICLES—CONSTITUTIONAL LAW.

In operating a motor vehicle the operator exercises a privilege which might be denied him, and not a right, and in a case of a privilege the legislature may prescribe on what conditions it shall be exercised. (*People ex rel. Ferguson* v. *Reardon*, 197 N. Y. 236, distinguished; *Matter of Peck* v. *Cargill*, 167 N. Y. 391, explained.)

(2.) SAME—OPERATOR OF AUTOMOBILE MUST TELL WHO HE IS TO PARTY INJURED BY HIS MACHINE.

It involves no violation of public policy or of the principles of personal liberty to enact that as a condition of operating such a machine the operator must waive his constitutional privilege and tell who he is to the party who has been injured or to the police authorities, if requiring him to give such information is an impairment of his constitutional privilege, which is not decided.

(3.) SAME—HIGHWAY LAW (L. 1910, CH. 374, § 290, SUBD. 3, CONSTITUTIONAL.

The Highway Law (L. 1910, ch. 374, § 290, subd. 3) enacts, "Any person operating a motor vehicle who, knowing that injury has been caused to a person or property, due to the culpability of the said operator, or to accident, leaves the place of said injury or accident, without stopping and giving his name, residence, including street and street number, and operator's license number to the injured party, or to a police officer, or in case no police officer is in the vicinity of the place of said injury or accident, then reporting the same to the nearest police station, or judicial officer, shall be guilty of a felony punishable by a fine of not more than five hundred dollars or by imprisonment for a term not exceeding two years, or by both such fine and imprisonment." *Held*, that this provision is not a violation of any constitutional privilege.

*People* v. *Rosenheimer*, 146 App. Div. 875, reversed.

(Argued May 5, 1913; decided June 17, 1913.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 7, 1911, which affirmed an order of the Court of General Sessions of the Peace in the county of New York sustaining a demurrer to an indictment and discharging the defendant from custody.

The facts, so far as material, are stated in the opinion.

*Charles S. Whitman, District Attorney (Robert C. Taylor of counsel), for appellant.* The provisions of section 290 of the Highway Law making it the specific duty of the individual operating a motor vehicle to identify himself in case of accident is constitutional. The state, when it licenses a man to use a dangerous instrumentality, has the power to impose as a condition that he shall make himself known if he does injury. No one has any absolute right to operate a motor vehicle. He cannot accept the state's license and repudiate the conditions upon which it is granted. The privilege against self-incrimination ceases to be a factor in this view of the matter. It is something which a man can waive. The act of accepting a license with such underlying conditions is *per se* a waiver. (*Ex parte* Kneedler, 243 Mo. 632; People v. Schneider, 139 Mich. 673; Comm. v. Boyd, 188 Mass. 79; State v. Unwin, 73 N. J. L. 529; 75 N. J. L. 500; People v. McWilliams, 91 App. Div. 176; Entick v. Carrington, 19 How. St. Tr. 1029; Boyd Case, 116 U. S. 616; State v. Davis, 108 Mo. 666; State v. Smith, 74 Iowa, 580; State v. Cummins, 76 Iowa, 133; People v. Henwood, 123 Mich. 317; State v. Donovan, 10 N. D. 203.) One who enjoys a bare privilege or license is bound to observe the conditions upon which the privilege is granted. This principle is applied in every case in which the police power is involved. (Dent v. West Virginia, 129 U. S. 114; People ex rel. Miller v. Lyman, 156 N. Y. 407; Gruman v. W. R. Assn., 153 N. Y. 449; O'Connor v. Hendrick, 184 N. Y. 421; Collister v. Hayman, 183 N. Y. 250; People ex rel. Burnham v. Flynn, 189 N. Y. 180; People v. Met. Surety Co., 205 N. Y. 135.) The

privilege against self-incrimination is one which the beneficiary can waive. (Vose v. Cockroft, 44 N. Y. 415; Pierson v. People, 79 N. Y. 424; Sentenis v. Ladew, 140 N. Y. 463; Mayor, etc., v. Manh. Ry., 143 N. Y. 1; Dodge v. Cornelius, 168 N. Y. 242; Dubuc v. Lazell, D. & Co., 182 N. Y. 482; Musco v. United Surety Co., 196 N. Y. 459; Skinner v. Steele, 88 Hun, 311; Ryan v. Reagan, 46 App. Div. 590; Matter of Sayre, 70 App. Div. 329; Meade v. Southern Tier, etc., Assn., 119 App. Div. 761.)

*Frederic R. Coudert* for National Highways Protective Society. The language of the statute does not conflict with even a strict interpretation of the constitutionanl clause. (People v. Henwood, 123 Mich. 317; State v. Davis, 108 Mo. 666; State ex rel. McClory v. Donovan, 10 N. D. 203; State v. Davis, 68 W. Va. 142; Brown v. Walker, 161 U. S. 591; Ex parte Kneedler, 243 Mo. 632; Comm. v. Boyd, 188 Mass. 79; People v. Schneider, 139 Mich. 673; Comm. v. Horsfall, 100 N. E. Rep. 362.)

*Gilbert D. Lamb* and *James W. Osborne* for respondent. The statute, Laws of 1910, chapter 374, section 290, subdivision 3, was and is void because contrary to the Constitution of the state of New York as compelling self-incrimination. (Jaques Case, 5 City Hall Rec. 77; People v. Gardner, 144 N. Y. 119; 1 Greenl. on Ev. 612, note, §§ 451, 469; Counselman v. Hitchcock, 142 U. S. 547; People v. Kelly, 24 N. Y. 74; U. S. v. Boyd, 116 U., S. 746.) The defendant as operating a motor vehicle, either as one of the several classes of owners or as an infant operator properly accompanied, did not waive the right of refusal of compulsory self-incrimination. (People v. Kerr, 27 N. Y. 188; S. P. Assn. v. Mayor, etc., 152 N. Y. 257; Nason v. West, 31 Misc. Rep. 584; Jacobson v. Miskell, 56 N. J. L. 255; Spires v. Parker, 1 T. R. 141; Musco v.

United Surety Co., 196 N. Y. 459; Peck v. Cargill, 167 N. Y. 391; Matter of Cullinan, 82 App. Div. 445; Cancemi v. People, 18 N. Y. 128; Foley v. Royal Arcanum, 151 N. Y. 199.)

CULLEN, Ch. J. The defendant was indicted for violating subdivision 3 of section 290 of the Highway Law, being chapter 374, Laws of 1910, which enacts: " 3. Punishment * * * for going away without stopping after accident and making himself known. * * * Any person operating a motor vehicle who, knowing that injury has been caused to a person or property, due to the culpability of the said operator, or to accident, leaves the place of said injury or accident, without stopping and giving his name, residence, including street and street number, and operator's license number to the injured party, or to a police officer, or in case no police officer is in the vicinity of the place of said injury or accident, then reporting the same to the nearest police station, or judicial officer, shall be guilty of a felony punishable by a fine of not more than five hundred dollars or by imprisonment for a term not exceeding two years, or by both such fine and imprisonment." The demurrer was sustained by the courts below (in the Appellate Division by a divided court) on the ground that the statute was unconstitutional as in violation of section 6, article 1 of the Constitution of the state, which provides that no person shall " be compelled in any criminal case to be a witness against himself," and this is the only question presented by this appeal.

Similar statutes have been passed in other states and it has been literally reproduced in the laws of the state of Missouri. The theory on which the learned trial judge proceeded was that the statute in effect required the person operating the motor to furnish evidence tending to prove him guilty of a crime, for if the injury to a person was the result of the culpable negligence of the operator, the latter was guilty either of an assault

or of a homicide, depending on whether the injuries inflicted were fatal or not. The indictment contained two counts, the first charging the injury to persons named therein to be due to the defendant's culpability; the second, that it was due to accident. A demurrer must lie, if at all, to the whole of an indictment. The second count negatives any criminality on the part of the defendant, thus charging a case in which the defendant would not be liable for any criminal prosecution. However, in my opinion, the statute does not provide for two offenses, or provide for an offense being committed in two different ways. The object of the provision, " Knowing that injury has been caused to a person or property due to the culpability of said operator or to an accident," is to make the statute more clearly applicable to all cases however caused than would be apparent if these words were omitted. The question then is whether a statute which requires a person to report the happening of an occurrence which may, though not necessarily must, involve a crime on his part is a violation of the constitutional provision referred to.

The statute does not require the operator of the motor vehicle to state the circumstances of the occurrence tending to show his responsibility, but merely to stop and identify himself. Undoubtedly it does not require him to make known a fact which will be a link in the chain of evidence to convict him of crime, if in fact he has been guilty of one. Whether the compulsory furnishing of such a link is a constitutional violation may be questioned. The learned judge who wrote for the minority of the Appellate Division has presented in his opinion a very strong argument in support of the proposition that the statute is a valid exercise of the police power apart from considerations of the peculiar character of a motor car. Since the decision of this case in the Appellate Division the question has been presented to the Supreme Court of Missouri which, in a very forceful opinion, adopted the view entertained

by the judges who dissented in this case in preference to that of the majority. *Ex parte Kneedler*, 243 Mo. 632; 40 L. R. A. [N. S.] 622.) In the opinion of the learned court of Missouri reference is made to statutory enactments, at least partially similar in principle to that before us, the validity of which has either been upheld by the courts or has never been questioned. As to motor vehicles, laws requiring the registry of the names of their owners and chauffeurs and the display of the numbers of the vehicles in a conspicuous place thereon for the very purpose of identifying the car and the person operating it have been upheld. (People v. Schneider, 139 Mich. 673. See Frankford & P. P. Ry. Co. v. City of Philadelphia, 58 Penn. St. 119; City of St. Louis v. Williams, 235 Mo. 503.) Physicians are required to report deaths and their causes, druggists the sale of poisons, and failure to comply with these requirements is made a misdemeanor. (Penal Law, sec. 1743; Pub. Health Law, sec. 235.) The Labor Law (Section 87) requires a person in charge of any factory to report to the commissioner of labor all deaths, accidents or injuries and the details thereof. Compliance with any of these statutory regulations may, in the case of the commission of a crime by the person who is required to make the certificate or registry, prove an important factor in leading to his detection, but this is not sufficient to render the legislation invalid. Whether, as claimed by the respondent's counsel, the statute before us goes so much further in the way of self-incrimination as to render the illustrations referred to inapplicable, it is not necessary to definitely determine.

There is one ground upon which, in my opinion, the validity of the statute can be safely placed. The legislature might prohibit altogether the use of motor vehicles upon the highways or streets of the state. It has been so held in State of Maine v. Mayo (106 Me. 62), and Commonwealth v. Kingsbury (199 Mass. 542). Doubtless the legislature could not prevent

citizens from using the highways in the ordinary manner, nor would the mere fact that the machine used for the movement of persons or things along the highway was novel justify its exclusion. But the right to use the highway by any person must be exercised in a mode consistent with the equal rights of others to use the highway. That the motor vehicle on account of its size and weight, of its great power and of the great speed which it is capable of attaining, creates, unless managed by careful and competent operators, a most serious danger, both to other travelers on the highway and to the occupants of the vehicles themselves, is too clearly a matter of common knowlledge to justify discussion. The fatalities caused by them are so numerous as to permit the legislature, if it deemed it wise, to wholly forbid their use. (Otis v. Parker, 187 U. S. 606; People v. Persce, 204 N. Y. 397, 27 N. Y. Crim. 41.) If the legislature may declare it a crime to use a motor vehicle on the highway under any circumstances, I do not see why it may not equally declare it a crime to so use such a vehicle as to injure any one in person or property. That, in effect, is a diminution, not an increase, of the criminality it had the power to attribute to the use of a motor vehicle. The provision now before us is but still a further diminution of the statutory inhibition the legislature would be authorized to enact. It does not declare it a crime to operate an automobile on the highway or even that in its operation injury to persons or property shall be a crime, but only that failure by the operator, in case of such injury, to identify himself shall be criminal. I cannot see why the greater power does not include the less. Of course, the whole of this argument rests on the proposition that in operating a motor vehicle the operator exercises a privilege which might be denied him, and not a right, and that in a case of a privilege the legislature may prescribe on what conditions it shall be exercised. This principle was recognized by us in the case of Ives v. South Buffalo Ry. Co. (201 N. Y. 271). In that case

we conceded that in a work of such a nature that the legislature might prohibit its exercise altogether, it might prescribe the terms on which it could be carried on.   It is in this respect that the case befors us differs vitally from that of People ex rel. Ferguson v. Reardon (197 N. Y. 236), where it was held unconstitutional to compel a broker to deliver his private papers to the comptroller for examination so that the latter might discover whether the broker had committed a crime in failing to comply with the statute imposing a tax on stock sales.   The sale of property (of course we do not refer to exceptional articles, liquors, poisons and others) is a natural right protected by our Constitutionn.   (People v. Gillson, 109 N. Y. 389.)   I do not assert that all constitutional privileges may be waived as a condition to the exercise of privileges granted by the legislature.   Certain ones cannot be waived, but others may. (Vose v. Cockroft, 44 N. Y. 415; Mayor, etc., of N. Y. v. Manhattan Ry. Co., 143 N. Y. 1; Dodge v Cornelius, 168 N. Y. 242; Musco v. U. Surety Co., 196 N. Y. 459.)   I might hesitate even in a case like the present one in upholding a statute which required the operator of a vehicle to appear and be examined as a witness on the trial of a criminal prosecution against himself for his conduct in the occurrence.   But this statute goes to no such extent.   It is similar to the statute regulating the places where liquor is sold.   The owners are required, during the hours and days when sales are made unlawful, to keep the places of sale open to the public view, so if the vendor violates the law he may be detected.   The validity of this regulation has never been questioned.   So, also, a requirement that vendors shall report the sales of liquor and exhibit their books showing such sales has been held not to violate the privilege against self-incrimination.   (State v. Smith, 74 Iowa, 580; State v. Cummins, 76 Iowa, 133; People v. Henwood, 123 Mich. 317.)

The learned counsel for the respondent cites in support of his

position the opinion of O'Brien, J., in Matter of Peck v. Cargill (167 N. Y. 391). But that opinion, so far as it discusses the question here involved, received the approval of no other member of the court. (See erratum in vol. 168 N. Y.) It is not necessary to discuss at length the history and nature of the constitutional inhibition against being compelled to testify against oneself in a criminal case. That subject has received a most elaborate review in the .opinion rendered by Mr. Justice MOODY in the Supreme Court of the United States in Twining v. New Jersey (211 U. S. 78). It is sufficient to say that to permit its voluntary waiver violates no fundamental guaranty of liberty or personal right. On the contrary, since 1869 in this state, and I think now throughout the whole country, a defendant in a criminal case is permitted to testify in his own behalf; but when he does so he waives his constitutional privilege and his examination is subject to the same rules as any other witness, ·and his guilt or bad character may be proved from his own mouth. (Brandon v. People, 42 N. Y. 265; Connors v. People, 50 N. Y. 240; People v. Webster, 139 N. Y. 73-84, 10 N. Y. Crim. 486; People v. De Garmo, 179 N. Y. 130-134, 18 N. Y. Crim. 430; People v. Hinksman, 192 N. Y. 421-433, 72 N. Y. Crim. 585.) Moreover, as already said, the operator is not obliged to report the circumstances from which his culpability may be inferred, and if he be culpable it does not necessarily follow that he has been guilty of a crime. A distance separates the negligence which renders one criminally liable from that which establishes civil liability. That a defendant can be compelled as a witness to testify to facts establishing his civil liability is unquestionable. This statute does not prescribe any new criminal liability for injury to persons by a motor vehicle. The operator commits a crime only when his conduct is such as would in any other action on his part producing like results make him a criminal. The primary object of the statute, in my judgment, is not to convict any

person of crime, but to subject him to civil liability. I appreciate that when examined as a witness in a civil suit the defendant might claim his privilege. I also appreciate that the right to justify a disobedience of this statute by proof that the circumstances rendered him liable to criminal prosecution would be of little advantage to the defendant. He would acquit himself of one crime only by convicting himself of another. Nevertheless when we bear in mind not only the great danger occasioned by the use of motor vehicles, but also the fact that the great speed at which they can run enables the person causing injury to readily escape undetected, leaving parties injured in person or property unable to tell from whom they shall seek redress, I think it involves no violation of public policy or of the principles of personal liberty to enact that as a condition of operating such a machine the operator must waive his constitutional privilege and tell who he is to the party who has been injured or to the police authorities, if, indeed, requiring him to give such information is an impairment of his constitutional privilege, which we do not decide.

The judgment of the Appellate Division and that of the Court of General Sessions should be reversed, and judgment rendered for the People disallowing the demurrer, with permission to the defendant, at his election, to plead to the indictment.

HOGAN, J., (dissenting.) The statute under consideration requires a person operating a motor vehicle, knowing that injury has been done to a person due to the *culpability* of the operator, to stop and give his name and residence, including street and street number and operator's license number to the injured party, or to a police officer, or in the absence of a police officer to make a report to the nearest police station or judicial officer. A failure to comply with the statute is made a felony.

The indictment demurred to alleges that the defendant while operating a motor vehicle did run into and strike a carriage in

which two ladies were riding, which said running into and strik-
ing was due to the *culpability* of the defendant, and which re-
sulted in the death of one of the ladies and serious injuries to
the second lady.  A second count of the indictment states the
same facts except that the running into and striking was an
accident.

If the charge alleged in the first count of the indictment
were established the defendant might be convicted of a homi-
cide (Penal Law, section 1052), and he would also be subject
to indictment and conviction for a felony for the failure to
furnish evidence which might tend to connect or identify him
with the homicide by the statute here considered.

From the prevailing opinion I quote the following language,
" undoubtedly it (the statute) does require him (the operator)
to make known a fact which will be a link in the chain of evidence
to convict him of a crime, if in fact he has been guilty of any."

For that reason stated, it is my judgment that the statute
under consideration is in conflict with section 6 of article 1 of
the Constitution, which provides that " no person shall be com-
pelled in any criminal case to be a witness against himself."

In People ex rel. Lewisohn v. O'Brien (176 N. Y. 253, 264,
265) Judge EDWARD BARTLETT, writing, quotes the language
of Chief Justice MARSHALL in the Circuit Court of the United
States for the District of Virginia (June, 1807) in *Burr's Trial*
(1 Burr's Trial, 244), on the question whether a witness was
privileged not to accuse himself, as follows:

" If the question be of such a description, that an answer
to it may or may not criminate the witness, according to the
purport of that answer, it must rest with himself, who alone
can tell what it would be, to answer the question or not.   If,
in such a case, he say, upon his oath, that his answer would
criminate himself, the court can demand no other testimony of
the fact.   *   *   *   According to their statement, (counsel
for the United States) a witness can never refuse to answer

any question, unless that answer, unconnected with other testimony, would be sufficient to convict him of crime. This would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony, which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule, that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself; and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing; but, all other facts without it would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares, that no man is compellable to accuse himself, would most obviously be infringed, by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual, the court can never know. It would seem then, that the court ought never to compel a witness to give an answer, which discloses a fact that would form a necessary and essential part of a crime, which is punishable by the laws."

Judge BARTLETT continued: " A clearer and more cogent statement of the rule it would be difficult to find." This language adopted by this court would seem to cover the case at bar. The principle therein laid down it seems to me has been upheld in other cases. (People ex rel. Taylor v. Forbes, 143 N. Y. 219; Counselman v. Hitchcock, 142 U. S. 547; People v. Sharp, 107 N. Y. 427, 5 N. Y. Crim. 569; People ex rel. Ferguson v. Reardon, 197 N. Y. 236.)

While the defendant in the case at bar might waive a constitutional provision, and incriminate himself, the legislature is powerless to enact a law which will require him to waive such

a provision involving his personal liberty as a condition precedent to operating a motor vehicle upon the highway. While the conduct of an operator of a vehicle, in the failure to stop and render aid to an injured party, is to be deplored, the remedy here sought to correct the evil is an infringement upon the rights of individuals protected by the Constitution. Such rights it is the duty of courts to preserve, though the legislation may seem desirable to meet certain cases. (Wright v. Hart, 182 N. Y. 330, 333; Matter of Sherrill v. O'Brien, 188 N. Y. 185, 198; Ives v. South Buffalo Railway Co., 201 N. Y. 271.)

The judgment should be affirmed.

WERNER, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur with CULLEN, Ch. J., HOGAN, J., reads dissenting opinion.

Judgment accordingly.